429 So.2d 859 (1983)
STATE of Louisiana
v.
Myron JESSIE.
No. 81-KA-2096.
Supreme Court of Louisiana.
April 4, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., James Maxwell, Abbott J. Reeves, Asst. Dist. Attys., for plaintiffappellee.
Edward A. Armstrong, Jr., New Orleans, for defendant-appellant.
WATSON, Justice.
Defendant, Myron Jessie, was convicted of armed robbery in violation of LSA-R.S. 14:64 and sentenced to fifteen years at hard labor, without benefit of parole, probation or suspension of sentence. Defendant has appealed his conviction and sentence, assigning three errors by the trial court.

FACTS
On August 26, 1980, at approximately 1:45 P.M. a woman entered the American Automobile Association office. Simultaneously, the cashier, Alice McMaster, received a telephone call from an unidentified man. The caller inquired about traveler's checks and then asked if McMaster saw the girl standing at her window. When McMaster replied that she did, the man said that the woman was armed and there were three other armed people outside. If McMaster did not cooperate, she would be blown away. McMaster thought this was a bad joke, until the woman pulled a gun partially out of her clutch bag. McMaster handed the woman $3,100 in cash and $830 in traveler's checks. After staying on the *860 telephone for a while, the caller hung up. Ms. McMaster was a new employee at A.A.A., who had been there almost a month.
The A.A.A. pay phone is not visible from McMaster's desk, but a woman in front of the cashier would be visible to someone standing at the pay phone.
Earlier that day, Myron Jessie, a former employee of A.A.A., had been hanging around the premises. Jessie came in the building about 11:00 A.M., talked to employee Judy Claverie, gave the false name of Johnson, and asked about traveler's checks and travel information. However, he never picked up any travel materials. Jessie got change for a quarter from the relief cashier and made a phone call. Jessie approached Claverie about three times between 11:00 and 12:00 with his appearance slightly altered by the presence and absence of a hat. He had a brown tote bag in and out of his hand. Claverie's desk is around the corner from that of McMaster. Judy Claverie did not immediately recognize Jessie as a past employee because she was accustomed to seeing him in a suit. The next day she remembered the name. Jessie left the building before Claverie was relieved for lunch at noon.
Susan Ralston, another A.A.A. employee, was working as relief cashier that day and saw Jessie return to the A.A.A. office about 1:30 or 1:40 P.M. Jessie was wearing sun glasses, a straw hat and a blue shirt. Ralston remembered Jessie as a past salesman, but had been accustomed to seeing him in a navy blue suit. Jessie asked Ralston for change for a quarter and she said he "used the phone". (Tr. 43) However, she then admitted that she could not see exactly where he went when he got the change. Apparently he walked around the corner in the direction of the pay phone and she assumed that he made a phone call. The time of this apparent phone call coincided with the time that McMaster received the phone call from the male accomplice of the armed robber.
Immediately after the robbery, about 1:50 P.M., Alfred Parker, the assistant sales manager of A.A.A., saw Jessie in the A.A.A. parking lot. Parker waived but Jessie either did not see or did not notice him and kept on going. Parker saw Jessie proceeding toward a blue and white Malibu automobile. When the car approached him, Jessie backed off and waived it away. "Instead of the car coming toward him he went towards the car" (Tr. 49). After Jessie's signal, the car changed its direction away from Parker.
Sergeant Vincent Lamia of the Jefferson Parish Sheriff's Office learned that Jessie had been in the building before the robbery and also at the time of the robbery, and obtained a search warrant for Jessie's automobile. In the automobile were photographs associating Jessie and one Lorraine Ruiz and a Greyhound luggage receipt with a Beaufort, South Carolina, address. Lorraine Ruiz was subsequently identified by McMaster as the armed robber and arrested at the South Carolina address on the luggage receipt.
Gilda Bannister, who knew Jessie both at school and as an employee of A.A.A., had seen Jessie with Lorraine Ruiz in the Lake Forrest Shopping Center.
The charges against Lorraine Ruiz and Myron Jessie were severed for trial.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the circumstantial evidence was insufficient to support his conviction for armed robbery. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LSA-R.S. 15:438; State v. Williams, 310 So.2d 513 (La.1975).
First, is there any reasonable hypothesis of innocence? Jessie's visits to the A.A.A. office were not for his avowed purpose of obtaining travel information and/or traveler's checks. He did neither. He obtained change for a quarter in order to make a telephone call and there are few other uses for such change. Jessie gave a false name to the receptionist and made some attempt to disguise his appearance. Jessie apparently made a phone call from a position *861 where he could see Lorraine Ruiz in front of the cashier's window, but the cashier could not see him. Immediately after the robbery, Jessie behaved suspiciously and entered the automobile of an anonymous friend in the A.A.A. parking lot. There is no reasonable hypothesis of innocence which explains all of Jessie's actions, although any one in and of itself might be innocuous. The trial court correctly concluded that any reasonable hypothesis of innocence had been excluded. State v. Bernard, 404 So.2d 914 (La.1981); State v. Austin, 399 So.2d 158 (La.1981).
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Jessie was guilty of joining with Ruiz in carrying out the armed robbery. There is nothing which suggests a reasonable doubt about Jessie's guilt. State v. Parker, 425 So.2d 683 (La. 1982).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that a new trial should have been granted because the trial court's reasons for judgment erroneously indicate that Gilda Bannister had seen Myron Jessie and Lorraine Ruiz in the Lake Forrest Shopping Center parking lot on the day of the robbery.
The trial court's oral reasons for judgment stated: "Mrs. Gail Bannister who knew Mr. Jessie testified among other things that she saw Mr. Jessie with Miss Ruiz in the parking lot." (Tr. 70)
In reasons for denying a new trial, the trial court stated that Bannister's testimony was cited to show a close relationship between Jessie and Ruiz, not that they were together on the day of the crime. The original statement, in context, may imply that the two were together on the day of the crime, but that was apparently not the trial court's intention, as he clarified in reasons for denying new trial.
Any error appearing in the trial court's reasons for judgment was inadvertent and does not justify a new trial.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that his fifteen year sentence at hard labor is disproportionate to the suspended sentences given Lorraine Ruiz, who was the more active participant in the robbery. Ruiz pled guilty to simple robbery and forgery of traveler's checks.
The pre-sentence investigation report reveals that Jessie has a bad employment record and a poor marital record. Although Jessie received an honorable discharge from the army, he was actually released because he was a detriment to the army. When first arrested, Ruiz, a first offender, said Jessie had planned the robbery. Jessie had been on probation for possession of marijuana and carrying a concealed weapon. At the time of this offense, Jessie was on five years federal probation for possession of stolen mail. Jessie had stolen a government check, which he had someone else help cash. The investigating agent noted that, both here and in the stolen mail offense, Jessie used someone else.
The trial court noted that a firearm was used in the crime. Lorraine Ruiz had been given consideration in her sentencing because she was pregnant. A baby was born to her in jail, and she was a first time offender who had never even been arrested.
Co-defendants do not have to receive identical sentences. State v. Labure, 427 So.2d 855 (La.1983). Sentences should be tailored to the particular offense and offender. Apparently, probation was appropriate by the trial court for Ruiz because she had no prior arrests or convictions. While Jessie had never committed any crimes against the person, he had not responded to past probationary treatment and was on federal probation at the time of this offense. The parties' records suggest that Jessie was the mastermind behind this robbery.
The fifteen year sentence is not excessive. Compare State v. Smack, 425 So.2d 737 (La.1983).
*862 This assignment lacks merit.
For the foregoing reasons, the conviction and sentence of defendant, Myron Jessie, are affirmed.
AFFIRMED.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., concurs.
MARCUS, Justice (concurring).
Since our appellate jurisdiction in criminal cases extends "only to questions of law," when a claim is made on appellate review that a person has been convicted on insufficient evidence, whether direct or circumstantial, our inquiry should be restricted to only whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. La. Const. art. 5, § 5(C) (1974). Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1977). In Jackson, the United States Supreme Court noted that this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.... Once a defendant has been found guilty of the crime charged, the factfinder's roll as weigher of the evidence is preserved through a legal conclusion that upon judicial review all the evidence is to be considered in the light most favorable to the prosecution."
Accordingly, I respectfully concur.