436 So.2d 553 (1983)
STATE of Louisiana
v.
Robert Lee WILLIE.
No. 81-KA-0242.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
*555 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion Farmer, Dist. Atty., William R. Alford, Jr., Abbott Reeves, Margaret A. Coon, Asst. Dist. Attys., for plaintiff-appellee.
S. Austin McElroy, Covington, Thomas Ford, Franklinton, for defendant-appellant.
WATSON, Justice.
Defendant, Robert Lee Willie, was convicted of first degree murder and sentenced to death. On initial appeal his conviction was conditionally affirmed; the sentence vacated; and the case remanded: (1) to determine whether a printed note found near the murder scene created a reasonable doubt about his guilt; and, if not, (2) to hold a new penalty hearing by a jury, as provided by LSA-C.Cr.P. art. 905.1(B). State v. Willie, 410 So.2d 1019 (La.1982).
The facts of the crime are set out in the original opinion as follows:
"On May 28, 1980, at approximately 4:30 a.m., Robert Lee Willie and Joseph Vaccaro offered a ride to the victim, Faith Hathaway, outside of the Lakefront Theatre, a disco in Mandeville, Louisiana. Miss Hathaway, an 18 year old woman, had been celebrating her last night as a civilian before entering the United States Army. Instead of taking the victim to her home in St. Tammany Parish, as she had requested, Willie and Vaccaro took Hathaway to Fricke's Cave, a heavily wooded, secluded gorge south of Franklinton in Washington Parish. Willie or Vaccaro, or both, raped the young woman there. Afterwards, one of the men repeatedly stabbed the victim in the throat while the other held her hands. Hathaway's clothes and purse were found approximately one hundred fifty yards from her body on June 1st, 1980. Her body was discovered on June 4, 1980.
"On June 3, 1980, Willie and Vaccaro were arrested in Hope, Arkansas for unrelated crimes of aggravated rape, aggravated kidnapping and attempted murder committed against persons other than Hathaway. On June 10, 1980, both defendants admitted to police officers that they seized Hathaway but each accused the other of raping her and slashing her throat." 410 So.2d at 1023.

PROCEEDINGS ON REMAND
The trial court conducted an evidentiary hearing in regard to the note found near the scene of the crime. The crime occurred at Fricke's Cave, a "big wash" filled with trees, brush and swamp. (Transcript on Remand, Vol. II, p. 125) After some of Faith Hathaway's clothes were located on a Monday, three private individuals aiding in the search for her body found the note on Tuesday. The body was discovered on Wednesday "three or four hundred feet south" of the clothes "down toward the swamp". (Transcript on Remand, Vol. II, p. 126) The note is an unsigned and printed message on a scrap of paper which reads "you never find her". Tests revealed no fingerprints. Willie denied printing the note. Willie's counsel did not engage a handwriting expert, because investigation indicated it would be futile. Vaccaro is illiterate. There was no evidence: (1) connecting the note with the crime or Willie; (2) showing who wrote the note; or (3) when it was left.
The trial court, after hearing the evidence, found that the note had no significance and did not create a reasonable doubt about Willie's guilt.
Immediately thereafter, the trial court commenced a new sentencing hearing. A jury was impaneled and evidence was presented by both the state and the defense. Following arguments by counsel and instructions by the court, the jury retired to deliberate. The jury found two aggravating circumstances: (1) that the defendant was engaged in the perpetration or attempted perpetration of aggravated rape; and, (2) that the offense was committed in an especially heinous, atrocious or cruel manner. The recommendation of the jury was that the defendant be sentenced to death.
*556 On appeal from the proceedings on remand, the defendant assigns eight errors by the trial court.[1]

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the court erred in not allowing him to call the original twelve jurors to establish what effect the note might have had on their decision.
The murder occurred in Fricke's Cave, a large gorge. The wadded up note was discovered some distance from the actual murder scene at the bottom of a steep embankment leading to the cave area. The note was found the day before the victim's body was located. Nothing was produced at the hearing which connected defendant or the crime with the note.
There is no authority for recalling jurors to examine them as to the effect some newly discovered article of evidence might have had upon them. On the contrary, the statutory law specifically prohibits impeachment of a verdict by a member of the jury.
"No juror, grand or petit, is competent to testify to his own or his fellow's misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member." LSA-R.S. 15:470.
The ruling of the trial court was correct. There is no merit to this assignment.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the court erred in not considering the possible effect the note might have had at the sentencing phase of the original trial. The ruling of the trial court was precise:
"From my understanding of the ruling of the Supreme Court in this particular case, it is up to this court to decide whether from the evidence presented a reasonable doubt would exist as to the guilt of the accused based upon its note and its effect that it might have on a jury. Based upon the evidence which the court has heard, based upon the evidence the court heard at the original hearing, the court does not think that the note adds anything significant one way or the other to the case of the defendant or, for that matter, to the case of the state. The court, therefore, deems it to be insignificant to not in any way create any reasonable doubt as to the guilt of the accused." Transcript on Remand, Vol. II, pp. 36-37.
The trial court was correct in its appreciation of the remand order: the sentence was set aside for other reasons. There was no requirement that the trial court consider what impact the note might have had on the jury at original sentencing.[2]
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the trial court erred in not defining for the jury the phrase "in an especially heinous, atrocious or cruel manner". LSA-C.Cr.P. art. 905.4.
In instructing the jury, the trial court noted that the state relied on two aggravating circumstances. The first, aggravated rape, was defined for the jury but the second, that the crime was committed "in an especially heinous, atrocious or cruel manner" was not defined.
Defendant relies principally on State v. Sonnier, 402 So.2d 650 (La.1981). While Sonnier indicates that it is desirable for the trial court to instruct the jury about what constitutes a heinous crime, the square holding of that case does not mandate such an instruction. When the evidence reflects that, in fact, there was torture, or the pitiless infliction of unnecessary pain on the victim, the jury has correctly interpreted *557 the meaning of this aggravating circumstance.
Faith Hathaway was taken in the early morning hours on a lengthy ride, held prisoner, disrobed, forced to walk naked and blindfolded down a steep gorge, raped with the use of sufficient force to damage the skin on the inside of her thighs and to tear her vaginal region, held with her legs in a spread eagle position and her throat slashed by repeated knife thrusts. The evidence in defendant's own statement reflected that the killing took place as follows:
"... Joe [Vaccaro] made her lay on the ground and then got his big old knife now, and he just cut her throat and he just started jugging her in the throat with it man ... Just jugging her, I mean jugging her.
"Qes: How many times do you think he stabbed her?
"Ans: I don't know man... She had her head lying in his lap... He had her by the hair... He kept saying...
"Qes: What were you doing.
"Ans: Freaking out man ... He kept saying `this whore ain't dead yet'. I kept telling him come on man come on. He just kept jugging her man..." Original Hearing, Vol. III, p. 385.
The defendant's description of the killing and repeated "jugging"[3] does not comport with the evidence in one respect. The pathologist, Dr. Paul McGeary, testified that Faith Hathaway was found lying on her back with her legs spread as wide as possible and the arms extended over her head. The doctor stated that she must have been held in this position while dying and probably to the point of death. Otherwise, her legs would not have remained extended and her arms would not have been held over the head; there is a natural tendency to draw the limbs closer to the body and curl up in a fetal position. The pathologist confirmed that injuries to the inner thighs, the genital area and the vaginal opening indicated forceful rape prior to death. Faith Hathaway also had a defensive wound on the right hand. Dr. McGeary testified that the victim would have required some minutes to die as a result of the cut throat and said her death would have been a painful one. A chain and medallion were embedded in her neck.
The jury correctly concluded that the crime was a heinous one; it involved the pitiless infliction of unnecessary pain on the victim. Since the jury's finding is supported by the evidence, failure to instruct the jury as to the definition of especially heinous, atrocious or cruel has no significance.
Further, since there was clear proof of one aggravating factor found by the jury, any error in charging the jury as to another factor is harmless. State v. Narcisse, 426 So.2d 118 (La.1983).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant argues that the trial court erred in not giving a requested special charge as follows:
"If you find that the defendant did not actually murder the deceased but was merely a principal to the murder, then you cannot return a verdict of death."
A requested special charge shall be given, if it is not included in the general charge, and if it is wholly correct and pertinent. LSA-C.Cr.P. art. 807.
The requested special charge is not wholly correct. A principal in Louisiana who aids and abets in the commission of a first degree murder may be sentenced to death provided he had specific intent to kill or to inflict great bodily harm on the victim. State v. Sonnier, supra; Enmund v. Florida, ___ U.S. ___, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
Therefore, the assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends that the trial court erred in imposing an excessive sentence. This argument turns on the fact that co-defendant *558 Vaccaro was also found guilty of first degree murder but received life imprisonment without benefit of parole, probation, or suspension of sentence.
Because a co-defendant received a less severe sentence, Willie's sentence is not ipso facto excessive. Co-defendants do not have to receive identical sentences. State v. Jessie, 429 So.2d 859 (La.1983); State v. Labure, 427 So.2d 855 (La.1983); State v. Rogers, 405 So.2d 829 (La.1981). Before imposing the death penalty, a jury must consider both the crime and the particular offender. State v. Sawyer, 422 So.2d 95 (La.1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). A death sentence is not necessarily disproportionate because one defendant in a factually similar case received life imprisonment. State v. Taylor, 422 So.2d 109 (La.1982). While Willie may have been less culpable than his criminal partner, there is nothing to indicate that his role was a subsidiary one. Compare State v. Sonnier, 380 So.2d 1 (La. 1979).[4]
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER SIX
Defendant argues that the trial court erred in imposing a sentence that was cruel and unusual in violation of the Constitutions of the United States and the State of Louisiana.
Because defendant is presently serving three consecutive life sentences in federal prison and his date of discharge falls in the second half of the twenty-first century, it is argued that defendant could not face execution until the year 2030 and the inordinate length of time between sentence and execution make the sentence unconstitutionally cruel and unusual. However, there is nothing to bar the federal authorities from returning Willie to state custody at an earlier date. Causey v. Civiletti, 621 F.2d 691 (5 Cir., 1980).
This assignment lacks merit.

DEATH SENTENCE REVIEW
This court is required to review every sentence of death for excessiveness. LSA-C.Cr.P. art. 905.9 provides as follows:
"The Supreme Court of Louisiana shall review every sentence of death to determine if it is excessive. The court by rules shall establish such procedures as are necessary to satisfy constitutional criteria for review."
Three determinations are mandated by Rule 905.9.1:
"Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
"(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
"(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
"(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
A Uniform Capital Sentence Report with an attached pre-sentence investigation report has been submitted by the trial court. According to these reports, Robert Lee Willie is a twenty-five year old white male who has never been married and has no children. He has a low, normal I.Q. of 81. Willie has a minimal employment record, but a substantial history of criminal activity including simple burglary, motor vehicle violations, criminal damage, aggravated escape, conspiracy to kidnap, kidnapping and second degree murder.[5] At the present time, Willie is in the custody of the federal prison system serving a number of life sentences arising from the kidnapping charges. Defendant is also under indictment for killing a police officer in 1978.
*559 The pre-sentence report correctly concludes that Willie constitutes a serious and clear threat to society.
PASSION, PREJUDICE OR ARBITRARY FACTORS
There is no indication or contention that passion, prejudice or any arbitrary factor entered into the death sentence given defendant.
AGGRAVATING CIRCUMSTANCES
The two aggravating circumstances found by the jury were that the crime was committed during the perpetration or attempted perpetration of aggravated rape and that the crime was committed in an especially heinous, atrocious or cruel manner. The evidence presented at the sentencing hearing, particularly the statement of the defendant and the testimony of the pathologist, tend strongly to support both circumstances. The victim was unquestionably raped. She was taken, blindfolded and naked, to a remote area where, while spread-eagled on the ground, her throat was repeatedly slashed by one of the perpetrators while the other held her legs spread until she died.
While any taking of life may be described as heinous, the facts of this crime place it in the category contemplated by the legislature when it provided that especially heinous, atrocious or cruel homicides subject the offender to the possibility of capital punishment.
PROPORTIONALITY
The Twenty-Second Judicial District is comprised of two parishes, Washington and St. Tammany. Defendant's trial was conducted in Washington Parish but the sentence review memorandum submitted by the state includes information concerning first degree murder cases in both parishes. The memorandum includes seventeen cases from St. Tammany Parish and fourteen from Washington Parish.
In only two other cases, State v. Kirkpatrick and State v. Clark and Mikell, have death sentences been imposed. Kirkpatrick was tried in St. Tammany Parish in 1983 and his case has not yet had appellate review. The death sentences of Roy Clark, Jr., and Brent Mikell were vacated and they were sentenced to life imprisonment because their death sentences were imposed under an unconstitutional statute. State v. Clark, 340 So.2d 208 (La.1976), cert. denied 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782.
The only case with facts somewhat similar to those here is State v. Moran, 370 So.2d 532 (La.1979), a St. Tammany prosecution. Moran forced the victim into his vehicle, drove her from New Orleans to Slidell, raped, stabbed and choked her. The victim actually died of drowning. Moran was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. However, the defendant was a person with mental problems, and the jury may have concluded that his responsibility was diminished by that fact.
Considering the sentence review memoranda submitted by both the state and the defendant, and the paucity of similar cases, the sentence imposed on the defendant, Robert Lee Willie, cannot be said to be disproportionate.

CONCLUSION
For the reasons assigned, the conviction and sentence of the defendant, Robert Lee Willie, are affirmed.
AFFIRMED.
NOTES
[1] Although assignments one, two and four were not argued, they will be considered because this case involves a death penalty. State v. Berry, 391 So.2d 406 (La.1980).
[2] Additionally, the note could not have had any sentencing significance to the jury.
[3] "Jugging" in street talk usually refers to an upward slashing motion with a knife.
[4] According to Vaccaro, Willie was the one who raped and killed Faith Hathaway.
[5] Although that offense, the murder of Dennis Hemly, was committed prior to the instant offense, Willie was not convicted until after the current proceedings.