LEON A. CANNIZZARO, JR., Judge.
This case involves an error patent in the sentence imposed on the defendant, Sonny Allen. This Court affirms the defendant’s conviction but amends his sentence in part.
STATEMENT OF THE CASE
On May 17, 2002, the defendant was charged by bill of information with two counts of violating La. R.S. 40:966(A)(1). One count was for distribution of heroin, and the other count was for possession of heroin with intent to distribute. At a hearing on July 12, 2002, the trial court found probable cause to bind the defendant over for trial and denied the defendant’s motion to suppress the evidence. A trial was held on October 28, 2002, and a twelve-member jury found the defendant guilty as charged of distribution of heroin and guilty of the lesser included offense of attempted possession of heroin with intent to distribute. He was sentenced on November 13, 2002, to serve five years on each count without benefit of parole, probation, or suspension of sentence with the sentences to run concurrently. The defendant’s motion for an appeal was granted on November 18, 2002.
I ^STATEMENT OF THE FACTS
At trial New Orleans Police Department (“NOPD”) Detective Robert Ferrier, Jr. testified that on April 25, 2002, he was part of a surveillance team working in a New Orleans housing development (the “Development”). The team was conducting surveillance in the 2400 block of Martin Luther King Boulevard and the 2400 block of Thalia Street. On each street was an apartment building, and between the two buildings was a courtyard that was accessible through breezeways in the buddings. There were two banks of mailboxes on the courtyard side of the Martin Luther King Boulevard building. Detective Ferrier was in a secluded position on the Martin Luther King Boulevard side of the courtyard from which he could observe the courtyard without being seen. NOPD Detective Ryan Lubrano was in a secluded position on the Thalia Street side of the Development from which he could see cars leaving the area.
As he began his surveillance, Detective Ferrier noticed the defendant loitering by himself in the courtyard. Then an unidentified man approached the defendant, and the two spoke briefly. The man handed the defendant what appeared to Detective Ferrier to be money, which the defendant put in his front pocket. The defendant then walked to the bank of mailboxes at 2419 Martin Luther King Boulevard, reached into one of the mailboxes, and removed a brown napkin. The defendant then walked back to the unidentified man, removed a small object from the napkin and gave it to the man. The man took the object and walked away. The defendant then walked back to the mailbox and returned the napkin.
Detective Ferrier suspected a drug transaction, and he radioed his backup team that a man who had purchased drugs was leaving the courtyard in the Development. That man was never apprehended.
| sAbout fifteen minutes later, however, two other men approached the defendant and spoke with him. One of the men handed the defendant what appeared to be currency, which the defendant put in his front pocket. The defendant then walked back to the mailbox to which he had gone previously, removed a brown napkin, and took out a few objects. He put the napkin back in the mailbox, walked to the second *84 man, and gave to him the small objects. The two men then left the courtyard. Again the detective notified his backup team that men who appeared to have bought contraband were leaving the courtyard.
Detective Lubrano testified at trial regarding his involvement in the surveillance of the 2400 block of Thalia Street. He saw two men park and get out of a brown van. The two men walked through a breezeway into the courtyard of the Development that was under surveillance. Detective Lubra-no then heard Detective Ferrier’s dispatch concerning the description of two men seen in a drug transaction. Shortly thereafter the same two men who had gotten out of the van returned to it, got in the van, and drove away.
NOPD Detective Andrew Palumbo, who was part of the backup team, testified at trial that he got a description of the van and the two men from the two detectives conducting the surveillance at the Development. Detective Palumbo saw the brown van at the corner of Simon Bolivar Boulevard and Thalia Street. He and his partner, NOPD Detective Jeff Giroir, followed the vehicle to the 100 block of Elk Street, where they conducted a takedown. Also, NOPD Detectives Kyle Hinrich and Trevor Reeves testified at trial that they assisted Detectives Palumbo and Giroir in the investigatory stop of the van until they ascertained that it was safe for Detectives Palumbo and Giroir to proceed alone.
[¿During the investigatory stop, the vehicle pulled over, and the driver was asked to get out of the van. As the driver did so, Detective Palumbo saw him drop three foil packets onto the floorboard of the van. Detective Palumbo retrieved the packets and observed that they contained a powder he believed to be heroin. When the front seat passenger and the rear seat passenger were ordered to exit the van, cocaine-laced cigarettes and a bag of crack cocaine were found on the person of the back seat passenger. All three passengers were arrested and tried separately from the defendant.
Shortly after the three passengers were arrested, Detective Ferrier instructed Detectives Hinrichs and Reeves to come to the courtyard that was under surveillance in the Development. When they entered the courtyard, Detectives Hinrichs and Reeves immediately recognized the defendant from the description Detective Ferrier had given them. Then they arrested the defendant. Detective Hinrich went to the mailbox that had been frequented by the defendant and found four pieces of foil in a brown napkin. In each piece of foil was a substance that was determined to be heroin.
At trial the parties stipulated that the substance in the four pieces of foil found in the napkin in the mailbox was heroin. The parties also stipulated that the substance contained in the three foil packets found during the arrests of the three persons in the van was heroin.
The defendant testified at trial. He denied going to the mailbox where the pieces of foil containing heroin were found, and he denied that he sold any drugs.
At trial the defendant was found guilty on two counts. One count was distribution of heroin in violation of La. R.S. 40:966(A)(1), which provides, inter alia, that it shall be unlawful to distribute certain controlled dangerous substances, including heroin. The other count was attempted possession of |Rheroin with the intent to distribute in violation of La. R.S. 40:979(B) and La. R.S. 40:966(A)(1). The defendant was sentenced to five years to run concurrently on each count without benefit of probation, parole, or suspension of sentence.
*85 ASSIGNMENT OF ERROR
The only assignment of error in this ease is that the trial court erred in imposing the defendant’s sentence without the benefit of parole. The State of Louisiana (the “State”) has conceded that imposing the sentence without the benefit of parole was error.
DISCUSSION
Statutory Penalty Provisions
La. R.S. 40:966(B)(1) provides the penalty for any person who violates the provisions of La. R.S. 40:966(A) with respect to certain narcotic drugs, including heroin. Any person convicted of violating that statute with respect to the specified narcotic drugs shall “upon conviction ... be sentenced to imprisonment for not less than five nor more than fifty years at hard labor at least five years of which shall be served without benefit of probation, or suspension of sentence.... ”
La. R.S. 40:979(B) provides the penalty for anyone who attempts to possess with intent to distribute certain narcotic drugs, including heroin. That statute provides that any person'who attempts to possess with intent to distribute certain narcotic drugs, including heroin, “shall, upon conviction, be imprisoned at hard labor for not less than eight nor more than fifty years without benefit of parole, probation or suspension of sentence....”
Error Patent
The defendant was sentenced as to each of the two counts of which he was convicted to “serve five (5) years at hard labor in the custody of the | (¡Louisiana Department of Corrections.” The sentence was imposed “without benefit of probation, parole or suspension of sentence” to run concurrently as to each count.
The defendant’s argument that his sentence should be without benefit of probation and suspension of sentence only and not without benefit of parole is clearly valid for the conviction on the count relate ing to the distribution of heroin in violation of La. R.S. 40:966(A)(1). The penalty provision of that statute is contained in La. R.S. 40:966(B), which provides that the sentence shall be without benefit of probation or suspension of sentence for at least five years of the sentence. The statute does not provide, however, that the sentence is restricted as to parole.
The defendant has raised as his sole assignment of error the imposition of his sentence for the distribution of heroin without the benefit of parole. Not only does the defendant raise this error, but also the State agrees that the defendant’s argument on this issue has merit. This Court agrees.
Discrepancy in Statutoiy Sentencing Provisions
La. R.S. 40:979(B) contains the penalty provisions for the defendant’s conviction on the count relating to the attempted possession of heroin with intent to distribute. This Court notes that the minimum sentence for attempted possession of heroin with intent to distribute exceeds by three years the minimum sentence for the actual distribution of heroin. Further, the sentence for the attempted crime is to be imposed without not only the benefit of probation and suspension of sentence but also without the benefit of parole. Thus, the minimum mandatory sentence for the lesser included offense of attempted possession of heroin with intent to distribute is greater than the minimum mandatory sentence for the crime of actual distribution of heroin.
|7In the instant case, the sentence imposed on the defendant was on its face illegally lenient, because the defendant was *86 not sentenced to the mandatory minimum of eight years as required by La. R.S. 40:979(B) for the attempted crime conviction. This Court has the authority to correct an illegal sentence at any time. La. C.Cr.P. art. 881.6. However, were this Court to impose the sentence statutorily mandated by La. R.S. 40:979(B) as the minimum sentence for attempted possession of heroin with intent to distribute, the defendant would be required to serve a significantly more stringent sentence for the attempted crime than for the completed crime.[1]
Excessive Sentence
The United States Constitution prohibits cruel or unusual punishment, U.S. Const. Amend. VIII, and the Louisiana Constitution prohibits not only cruel or unusual punishment but also excessive punishment. La. Const. Art. 1, § 20. Before this Court corrects the defendant’s sentence to impose the minimum punishment mandated by La. R.S. 40:979(B), this Court must consider the constitutionality of doing so. The issue to be resolved by this Court is whether imposing a sentence for an attempted crime that is greater than the sentence for the actual crime itself violates the Eighth Amendment of the United States Constitution and section 20 of article 1 of the Louisiana Constitution.
In State v. Brogdon, 457 So.2d 616 (La.1984), the Louisiana Supreme Court stated that “[a] constitutionally excessive sentence is one that is grossly out of proportion to the severity of the crime.... ” Id. at 625. In State v. McKeel, 443 So.2d 753, (La.Ct.App. 4th Cir.1983), aff'd in part and amended on other grounds, 452 So.2d 1171 (La.1984), this Court stated as follows:
A comparison of punishments in the same jurisdiction for other offenses is helpful in determining whether a particular sentence is so disproportionate as to constitute “cruel” or “unusual” punishment under the Eighth Amendment to the United States Constitution, or “excessive” punishment under Article I, Sec. 20 of the Louisiana Constitution of 1974.
443 So.2d at 756.
In State v. Vanvorst, 505 So.2d 123 (La.Ct.App. 4th Cir.1987), this Court stated that “[t]he imposition of a sentence although within statutory limit, may be unconstitutionally excessive if it is grossly disproportionate to the severity of the crime.... ” Id. at 126. In State v. Richardson, 97-1995 (La.App. 4 Cir. 3/3/99), 729 So.2d 114, this Court noted as follows:
Courts have the power to declare a sentence excessive although it falls within the statutory limits. The trial court has the authority to reduce a mandatory minimum sentence for a particular of-fence and offender if the sentence would be unconstitutionally excessive.
97-1995, p. 24, 729 So.2d at 126 (citation omitted). See also State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370.
In the instant case this Court finds that the trial court’s sentence of five years for attempted possession of heroin with intent to distribute was proper. By not sentencing the defendant to the mandatory minimum of eight years for the attempted crime when the defendant was sentenced to the five year mandatory minimum for the actual crime, the trial court effectively exercised his power to declare the mandatory minimum sentence for the attempted crime excessive.
This Court notes, however, that the sentence for the attempted possession of her *87 oin with the intent to distribute is required to be imposed without the benefit of parole as well as without the benefit of probation or | ^suspension of sentence. This Court finds that the imposition of a more stringent sentence for the attempted crime committed by the defendant than for the actual crime committed by the defendant to be the imposition of an excessive sentence in violation of section 20 of article 1 of the Louisiana Constitution. Therefore, when this Court corrects the error patent in the defendant’s sentence, the sentence for the attempted crime will exceed that for the actual crime and will be an excessive sentence. Thus, the sentence for the attempted crime should also be imposed absent the restrictions regarding parole.
CONCLUSION
The defendant’s sentence for his conviction on one count of distribution of heroin in violation of La. R.S. 40:966(A) is hereby amended to provide that the defendant is to serve five years at hard labor in the custody of the Louisiana Department of Corrections without benefit of probation or suspension of sentence. The defendant’s sentence for his conviction on one count of attempted possession of heroin with the intent to distribute in violation of La. R.S. 40:979(B) and La. R.S. 40:966(A) is amended to provide that the defendant is to serve five years at hard labor in the custody of the Louisiana Department of Corrections without benefit of probation or suspension of sentence. The defendant’s conviction on both counts of which he was convicted is hereby affirmed, and his sentence for both counts is hereby affirmed in all respects except as specifically amended in this opinion.
CONVICTION AFFIRMED AND SENTENCE AMENDED IN PART.

. This discrepancy is something that the legislature will have to address, if the discrepancy in the relevant statutes is to be eliminated.