IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 29, 2019 at Knoxville

## MICHAEL SHANE MCCULLOUGH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Obion County**
**No. 17-CR-139    Jeffery W. Parham, Judge**

_____

### No. W2019-00629-CCA-R3-PC

_____

The Petitioner, Michael Shane McCullough, challenges the denial of his petition for post-conviction relief attacking his jury convictions for criminal littering, initiation of a process to manufacture methamphetamine, and promotion of methamphetamine manufacture. On appeal, the Petitioner alleges that he received ineffective assistance due to (1) trial counsel's failure to interview the arresting officer and investigate the case, especially as it related to the weather conditions on the night of the Petitioner's traffic stop; (2) trial counsel's failure to adequately cross-examine the State's witnesses at trial about the substance found in the ditch; and (3) trial counsel's (who was also appellate counsel) failure to challenge the sufficiency of the evidence supporting his Class B misdemeanor conviction for criminal littering. After our review, we conclude that the Petitioner received ineffective assistance with regard to the appropriate classification of his criminal littering conviction; however, the Petitioner's other allegations of ineffective assistance are without merit. We must reverse the post-conviction court's judgment and remand the case for correction of the Petitioner's mitigated criminal littering conviction judgment form to reflect the appropriate Class C misdemeanor classification and a corresponding thirty-day sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Cristy C. Cooper, Martin, Tennessee, for the appellant, Michael Shane McCullough.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; and Tommy A. Thomas, District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

In February 2016, an Obion County grand jury indicted the Petitioner for disorderly conduct, criminal littering, initiation of a process to manufacture methamphetamine, and promotion of methamphetamine manufacture. See Tenn. Code Ann. §§ 39-14-502, -17-305, -17-433, -17-435. After a jury trial, the Petitioner was found guilty of criminal littering, a Class B misdemeanor; initiation of a process to manufacture methamphetamine, a Class B felony; and promotion of methamphetamine manufacture, a Class D felony. See State v. Michael Shane McCullough, No. W2017-01219-CCA-R3-CD, 2018 WL 2148451, at *1 (Tenn. Crim. App. May 9, 2018). The trial court imposed concurrent terms of six months, twelve years, and eight years, respectively, resulting in an effective sentence of twelve years to be served as a Range II, multiple offender.

The State presented the following evidence at the Petitioner's trial. Oliver Long testified that around midnight on Friday October 9, 2015, he was awakened by someone driving a four-wheeler "up and down the road" in front of his house. McCullough, 2018 WL 2148451, at *1. Deputy Michael Moore of the Obion County Sheriff's Office was dispatched to the area near Mr. Long's house to investigate the noise complaint involving the four-wheeler. Id. Approximately thirty minutes had passed when Deputy Moore "heard a 'loud four-wheeler' coming up the road." Id. Deputy Moore initiated a traffic stop of the four-wheeler being driven by the Petitioner. Id. As the "four-wheeler slowed down[,] . . . Deputy Moore observed a 'white ball-looking, about baseball-size object fly from [the hand of the driver] and into the ditch.'" Id. After the Petitioner eventually stopped, Deputy Moore asked him to identify the object that he threw from the four-wheeler; however, the Petitioner denied throwing anything. Id. "Deputy Moore attempted to perform a cursory search of the ditch for the thrown object while watching [the Petitioner] but was unable to locate anything at that time." Id. Deputy Moore instructed [the Petitioner] to take the four-wheeler home and 'park it,' letting him go with just a warning." Id.

The Petitioner left the area, and Deputy Moore searched the ditch for about five minutes. McCullough, 2018 WL 2148451, at *1. Deputy Moore testified that he found a "white plastic bag [sort of] like a Walmart bag, just a piece of a Walmart bag, and it had two smaller bags wrapped up in it. Both of them had white powder in them, or a white substance." Id. Deputy Moore averred that "[t]his was the only thing [he] 'found that matched the description of what [he] saw.'" Id. Furthermore, according to Deputy Moore, "[t]he ground was wet from rain earlier that evening but the bag was relatively dry." Id. After securing the item, Deputy Moore drove to the Petitioner's house. Id.

- 2 -

Deputy Moore "spoke with a family member at the house but was unable to speak with [the Petitioner] because [the Petitioner] 'left' when the officer pulled up to the house." Id. Later, when Deputy Moore arrived at the Sheriff's Office, he performed a field test on the substance in the bag, and it was positive for ephedrine. Id. at *2.

Subsequent testing by Special Agent Brock Sain of the Tennessee Bureau of Investigation ("TBI") crime lab revealed that the substance was ephedrine or pseudoephedrine, weighing 14.62 grams. McCullough, 2018 WL 2148451, at *2. In Agent Sain's opinion, "the substance appeared to be 'tablets crushed up,' a 'substance that is an over-the-counter drug' that is 'used in the manufacturing of methamphetamine.'" Id. Michael Simmons of the Obion County Sheriff's Department, testifying as an expert in the investigation of methamphetamine laboratories, "explained that pseudoephedrine and ephedrine [were] precursors for methamphetamine" and that "[i]n order to make methamphetamine, it [was] necessary to 'grind' the precursor to 'separate the binder from it' so that it 'dissolve[d]' quicker when placed in the solvent." Id. According to Officer Simmons, "he had seen items like those found in the ditch 'hundreds of times' while investigating labs where methamphetamine [was] made." Id.

The Petitioner called Kerry Dale Milton to testify on his behalf at trial. Mr. Milton "claimed that [the Petitioner] was at his house on the night of the incident to pick up" the Petitioner's four-wheeler, which Mr. Milton had repaired following the Petitioner's having had a wreck. Id. According to Mr. Milton, the Petitioner "came over around 10:00 p.m. that night and stayed for about an hour. Mr. Milton said [that the Petitioner] did not have a bag with him that night." Id.

At the conclusion of the proof, the jury found the Petitioner not guilty of disorderly conduct, but guilty as charged of the other offenses. Thereafter, the Petitioner appealed to this court, challenging the sufficiency of the evidence for his methamphetamine-related convictions but not his criminal littering conviction. See McCullough, 2018 WL 2148451, at *2. Specifically, regarding his methamphetamine-related convictions, the Petitioner complained that the State failed to prove (1) he "was the person who crushed the pills in the bag"; (2) he "knew of the contents of the bag"; or (3) "the bag found by Deputy Moore was the object thrown by [the Petitioner] from the four-wheeler." Id. This court found that the evidence was sufficient to support the Petitioner's convictions, reasoning "that it is not necessary for a criminal defendant to admit guilt in order to be convicted of a crime" and, furthermore, that "it was not even necessary that the proof show [the Petitioner] had actual possession of the drug precursors at the time of his arrest or be actually witnessed initiating the process." Id. at *3-4.

The Petitioner filed a pro-se petition for post-conviction relief on August 10, 2017, while his case was still pending a determination by this court on direct appeal. The post-

conviction court granted the State's motion to dismiss "without prejudice of [refiling], until such time as the direct appeal [was] concluded." The same month the direct appeal opinion was issued, May 2018, the Petitioner sent a letter to the court seeking to "open-up" his post-conviction ineffective assistance of counsel claims. With the assistance of counsel, the Petitioner filed an amended petition on June 29, 2018. Therein, the Petitioner raised the following instances of ineffective assistance of counsel: (1) trial counsel "failed to advise [the P]etitioner of any plea agreements or offers made by the [S]tate and failed to obtain any offers from the [S]tate"; (2) trial counsel "failed to properly investigate the case prior to trial"; (3) trial counsel "failed to request a continuance so that she could adequately prepare for her first criminal trial"; and (4) trial counsel failed "to properly cross-examine" the State's "witnesses against the [P]etitioner."

A post-conviction hearing was held on February 19, 2019, at which trial counsel and the Petitioner testified. Post-conviction counsel restated the issues as presented in the amended petition, and the State noted that it had filed a response denying those allegations.[1] No further opening statement was made by either side.

Trial counsel recalled being appointed to represent the Petitioner on June 16, 2016; she confirmed that the Petitioner's jury trial was held on July 27, 2016. At that time, trial counsel had been a practicing attorney for approximately a year and had been engaged in criminal defense work for about six months. This was her first jury trial.

The Petitioner had two prior attorneys assigned to his case, but they were both forced to withdraw due to a conflict of interest. The public defender's office represented the Petitioner immediately before trial counsel. According to trial counsel, on the day of her appointment, she was told by the public defender's office that discovery had been completed in the Petitioner's case. Trial counsel indicated that a trial date was not set at that time; she was "given a status day to come back and set the matter for trial."

Trial counsel indicated that she had between one and two months to prepare for trial, which, in her estimation, was "sufficient time to investigate and prepare this case[.]" When asked about specifics of her trial preparation, trial counsel asserted that she met with the Petitioner's previous attorney from the public defender's office and that they "had a lengthy discussion on the pros and cons of some of the defense." Trial counsel said she also met with the Petitioner several times, although she could not remember the exact number of times. Trial counsel testified that she went to the area of the traffic stop and took photographs. She also claimed that "there was a lot of case law research, statutory research."

---

[1] However, no response from the State appears in the technical record on appeal.

When asked about plea negotiations, trial counsel indicated that she spoke with the prosecuting attorney "just the one time about a possible plea." Trial counsel recalled that the Petitioner received an offer of eight years, which she conveyed to the Petitioner, including providing him with a copy of the plea-offer letter. Trial counsel affirmed her belief that she also discussed with the Petitioner his sentencing exposure if convicted at trial given his lengthy criminal history. Trial counsel maintained that the State had filed a notice of impeachment, seeking to impeach the Petitioner with his prior history if he chose to testify. Regardless, the Petitioner "was always adamant" that he wanted to go to trial because he claimed his innocence, according to trial counsel.

As far as interviewing witnesses, trial counsel indicated that she talked with the Petitioner's mother and "spoke to some other family friends at the time[.]" Moreover, she spoke with Kerry Dale Milton, the mechanic who repaired the Petitioner's four-wheeler, and Mr. Milton was called as a witness in the Petitioner's defense at trial. The Petitioner asked trial counsel to speak with his girlfriend at the time of his arrest; "ultimately, after more discussion, [trial counsel] did not interview [the girlfriend] because she was not there and present when any of the stop had happened," so the girlfriend "really couldn't contribute anything." According to trial counsel, the Petitioner did not ask her to speak with any other witnesses. Nonetheless, trial counsel confirmed that she did not speak with Deputy Moore prior to trial.

Trial counsel confirmed that she did not obtain a dispatch log of the evening in question from the Sheriff's Office. In addition, trial counsel said that she "was always informed" Deputy Moore's "body cam or car-dash cam" was not operational on the night he stopped the Petitioner. Trial counsel confirmed that she never "investigated a work order" regarding the status of Deputy Moore's camera, nor did she investigate the field test Deputy Moore performed on the substance back at the Sheriff's Office.

Trial counsel affirmed that she "investigate[d] the charge of criminal littering[.]" She explained,

> [T]hat was part of me going out and trying to take pictures of the area. I was trying to get a good understanding of, because I was told by the witnesses that I had spoken to that was a rather, a good area that people tended to dump things. Multiple things tended to stay in the ditch area, and so I had gone out myself to take pictures and see that firsthand.

In addition, trial counsel indicated that she reviewed the statute on criminal littering prior to the Petitioner's trial, although she could not remember the particular elements by the time of the post-conviction hearing. When asked what was the item the Petitioner was alleged to have littered, trial counsel replied, "It was the bag that they alleged to have found the ingredients for the amphetamine." Trial counsel could not recall how much the

bag weighed, though, she did recall the officer's describing it as "about the size of a baseball." She opined that the bag probably weighed less than five pounds.

Trial counsel was then asked whether she investigated the weather on the evening in question. She said that she "did go back and just try to see if there had been any substantial amount of rain or anything that had happened that night"; however, she did not "remember ever coming across anything that . . . could confirm that . . . was something that had occurred." According to trial counsel, everyone that she "had talked to never really mentioned that it was raining or anything." As she understood it, "any moisture or anything that would've been out there would've just been from a dew because of the time of night." Trial counsel believed that she did cross-examine Deputy Moore about the weather that evening, including questioning Deputy Moore about his belief that the item belonged to the Petitioner based upon the moisture present. When trial counsel was asked if she "cross-examine[d] any of the other State's witnesses," she responded, "I remember a lab from maybe TBI there. I don't believe I cross-examined them, no."

According to trial counsel, she received a copy of the preliminary hearing transcript, which she reviewed. She did not remember reviewing any recording with the Petitioner, although she affirmed that they discussed the testimony from the witnesses at the preliminary hearing and "some of" the Petitioner's defense. Trial counsel believed that the Petitioner's original attorney represented him at the preliminary hearing, but trial counsel did not recall ever speaking with her.

The Petitioner testified that he was incarcerated at the time of the hearing, serving his twelve-year sentence in this case at thirty-five percent with a consecutive six-year sentence reduced to probation. According to the Petitioner, he was not eligible for parole until November 2020.

The Petitioner confirmed that he was present at his preliminary hearing and that he was represented at that hearing by his original attorney. According to the Petitioner, he requested "a copy of it or a transcript of" the preliminary hearing from trial counsel but never received one.

The Petitioner next noted that this was trial counsel's first jury trial and then averred that trial counsel did not "have enough time to prepare for [his] defense." The Petitioner testified that he met with trial counsel twice in preparation for trial—once she came to his house, and another time they met in trial counsel's office and discussed trial procedures. The Petitioner affirmed that trial counsel went to the scene and took photographs of the area.

Relative to plea negotiations, the Petitioner claimed that he was only informed of one offer of twelve years at forty-five percent. The Petitioner avowed that he was never told of an eight-year offer. The Petitioner believed he was facing "anywhere from twelve to thirty years" if convicted at trial. Because the State was only offering twelve years, and because he "felt like [he] would probably get the low range" if convicted, he proceeded to trial. The Petitioner admitted that he "was pretty adamant about telling [his various attorneys] that [he] wasn't open to suggest any more plea agreements."

The Petitioner testified that "one of the big things" that should have been addressed by trial counsel "was the weather issue." The Petitioner opined that the issue "was very critical" because Deputy Moore "had testified that there had been a lot of rain that month" and that the ground was wet on the evening of the traffic stop. But, because the bag with the ephedrine inside was dry, Deputy Moore believed that the bag belonged to the Petitioner. However, the Petitioner claimed he had been unable to find "proof of any kind of rain the whole month of October." According to the Petitioner, he did not discuss this issue with trial counsel prior to trial because he was unaware it was going to be "brought up during the trial."

The Petitioner opined that "the dash and body cam" footage "was very critical because [Deputy Moore] stated that [his equipment] had been broke for a year" and that he had "put a work order in," to no avail. The Petitioner acknowledged that he did not request of trial counsel that she "obtain a copy of the work order regarding the dash cam or the body cam of the officer." According to the Petitioner, he "did bring up the issue on numerous occasions" to both the public defender and trial counsel "about having dash and body cam" footage. The Petitioner also claimed that he requested "fingerprint analysis or anything like that" but that "nothing ever got done in that fashion." Moreover, the Petitioner stated that he was not knowledgeable enough at the time of trial to request "the dispatch log from that evening."

According to the Petitioner, he provided trial counsel with three names of potential trial witnesses that were "involved" in the events of the evening—the Petitioner's mother, his girlfriend, and Mr. Milton. The Petitioner explained,

> [Mr.] Milton was one of the ones involved, because that's where I left his house—He was the mechanic working on my four-wheeler—That confirms that that's where I was coming from to where I was going. And my mother would confirm that that's where I showed up after the stop, and I explained to her that I just got stopped, and I was fixing to run to town with my girlfriend to get something to eat, and I would be back. And then once returning, she told me that an officer had stopped by the house and asked where I was, and she gave them the consent to search. And once he searched, he left.

- 7 -

In contrast, the Petitioner conceded that trial counsel did speak with his mother and that Mr. Milton was called as a trial witness.

Regarding cross-examination of the State's witnesses, the Petitioner claimed that there were "a lot of questions that could've been asked to other witnesses that come in the trial that . . . should've been asked." Specifically, the Petitioner indicated that "a lot of the witnesses . . . had testified to their past history with dealing with meth-pertaining cases," and he felt like trial counsel "should've questioned them on how they would've dealt with [his] situation" of being released from the traffic stop with only "a verbal warning" and the drugs being found later. The Petitioner surmised that with adequate preparation, trial counsel would have been able to rebut "the testimony of the [S]tate's witnesses."

The Petitioner confirmed that in addition to Deputy Moore, the State presented a "TBI lab person" at trial who testified that he analyzed the substance found by Deputy Moore and that it was ephedrine. No specific questions were posed about the substance of the TBI Agent's testimony or what more trial counsel could have done by cross-examining this witness.

With regard to his criminal littering conviction, the Petitioner averred that his conduct did not "fit the criteria" of the statute. Specifically, the Petitioner explained as follows:

> [T]here was a bag containing of ephedrine with a weight of 14.62 grams found on the side of the roadway, and the statute of criminal littering is something of five pounds to fifteen pounds, or 7.5 cubic feet to so much cubic feet, you know, in a public roadway or park or water area, or something along the statute. But if 14.62 [grams] is criminal littering, then the statute states five pounds, and it's far from five pounds.

The Petitioner complained that this issue was not "raised at trial."

The parties submitted the issues and the proof without any argument to the post-conviction court for determination. Thereafter, the post-conviction court denied the Petitioner relief by written order filed on April 5, 2019. The post-conviction court concluded that the Petitioner had failed to establish his claims of ineffective assistance of counsel, reasoning as follows:

> (1) Trial [c]ounsel failed to inquire into or negotiate a better plea bargain. [The] Petitioner testified that the only plea offer he received was a twelve-year offer as a multiple offender. Trial counsel testified that she conveyed to him an eight-year offer. Trial counsel also stated [the]

Petitioner was adamant about taking this case to trial. This was verified when [the] Petitioner testified at the post-conviction hearing that "I was pretty adamant telling them that I wasn't open to suggest any more plea agreements."

(2) Trial [c]ounsel's failure to properly investigate the case, facts, and law of the case. Trial counsel testified she had [two] months to prepare for trial. She testified that she had interviewed witnesses (with the exception of [the] Petitioner's girlfriend who was not present during the night in question), conducted a site visit to take photos, researched legal issues, and felt she had done sufficient preparation for trial. [The] Petitioner's primary argument appears to be that [t]rial [c]ounsel never investigated whether it actually rained the night in question. He testified that since the trial, he has researched the "internet" to determine that it did not rain. However, he failed to call any experts on this issue at the post-conviction hearing. Nor did he introduce any documentation as to any research he conducted. [The] Petitioner stated that at the time of the trial he did not think proof of rain or the lack thereof would be critical.

(3) That trial counsel failed to ask for a continuance to prepare for the trial. Even though it was her first criminal trial, she testified to the sufficient lengths she went to in getting ready for trial. Trial Counsel testified she had two months to prepare for the trial.

(4) That trial counsel did not properly cross-examine the trial witnesses. The Petitioner does not point to any specific instances for this position. He simply stated that she could have asked some more questions and object[ed] to certain items.

This timely appeal followed.

## ANALYSIS

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S.

668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to

- 10 -

whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The Petitioner first generally asserts that trial counsel's "inexperience result[ed] in ineffective assistance during the investigation, trial, or direct appeal of Petitioner's case." The Petitioner then raises the following specific allegations of ineffective assistance of counsel: (1) trial counsel failed to interview the arresting officer and investigate the case, especially as it related to the weather conditions on the night of the Petitioner's traffic stop; (2) trial counsel failed to adequately cross-examine the State's witnesses at trial about the substance found in the ditch; and (3) trial counsel (who was also appellate counsel) failed to challenge the sufficiency of the evidence supporting his Class B misdemeanor conviction for criminal littering. We will address each specific instance in turn.

## I. Failure to Investigate

Relative to trial counsel's failure to investigate, the Petitioner frames the issue on appeal as follows: "Trial counsel was ineffective in failing to investigate the weather conditions that were vital to the State's case against [the] Petitioner." The Petitioner asserts that trial counsel's "inexperience resulted in her failure to thoroughly investigate the State's case, which depended almost entirely upon the arresting officer's testimony that it had rained before he discovered the white bag in the ditch." According to the Petitioner, "[a] competent and trained defense attorney would have immediately secured the weather data for the night in question and used that information to effectively discredit the arresting officer at trial" and "also would have at least attempted to interview the arresting officer prior to trial." In addition to these failures, the Petitioner notes that trial counsel also did not secure "the arresting officer's dispatch report." In the Petitioner's estimation, had trial counsel been better prepared, the Petitioner "would have had objective evidence that he could have used at trial to show that the officer had no way of connecting [him] to the white bag found in the ditch that night."

In response, the State first notes the post-conviction court's ruling that the Petitioner neither "called any experts on this issue" at the post-conviction hearing nor did he "introduce any documentation as to any research he conducted" about it raining on the evening in question. The State then asserts that the Petitioner has "failed to present clear and convincing evidence that no rain fell on the date in question," and thus, the Petitioner cannot show any prejudice due to trial "counsel's failure to further investigate the weather from that date."[2] The State does not respond to any other aspects of the Petitioner's argument.

---

[2] The State also attached to its brief "a report of weather data from the National Centers for

- 11 -

The Petitioner's general allegation deals with trial counsel's lack of experience and the short time she had to prepare for trial. However, "lack of experience does not equate to per se deficient performance. A successful claim of ineffectiveness requires more than just a showing that counsel was inexperienced." Andre Bland v. State, No. W2007-00020-CCA-R3-PD, 2009 WL 910197, at *39 (Tenn. Crim. App. Apr. 3, 2009) (citing Russell v. State, 849 So.2d 85, 122 (Miss. 2003)). Accordingly, a petitioner "must demonstrate with specificity that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment and that such errors prejudiced the defense." Id.

Making general observations about trial counsel's performance, the post-conviction court determined that "[e]ven though it was [trial counsel's] first criminal trial, she testified to the sufficient lengths she went to in getting ready for trial" during the approximately two months she had to prepare. The post-conviction court also remarked that trial counsel "testified that she had interviewed witnesses (with the exception of [the] Petitioner's girlfriend who was not present during the night in question), conducted a site visit to take photos, researched legal issues, and felt she had done sufficient preparation for trial."

Trial counsel indicated that she met with the Petitioner several times; that she spoke with the Petitioner's previous attorney from the public defender's office about the Petitioner's defense; that discovery had been completed in the Petitioner's case at the time of her appointment; that she went to the area of the traffic stop and took photographs; that she conducted legal research for the Petitioner's case; that she received an eight-year plea offer from the State, which she reviewed with the Petitioner; that she spoke with the Petitioner's mother; that she interviewed Mr. Milton and called him as a defense witness at trial; that she forewent interviewing the Petitioner's girlfriend because the girlfriend was not present for the traffic stop; and that she received a copy of the preliminary hearing transcript, which she reviewed and discussed with the Petitioner. We agree with the post-conviction court that trial counsel had adequate time to investigate and prepare for the trial. The Petitioner has not established deficient performance or prejudice based upon trial counsel's lack of experience.

The Petitioner's specific allegations in this regard on appeal deal with trial counsel's failure to interview the arresting officer, Deputy Moore, and her failure to investigate and secure the weather data from the night in question. In general, when an

Environmental Information which indicate[d] that in the twenty-four-hour period between 7:00 a.m. on October 9 and 7:00 a.m. on October 10, 2015, 0.42 inches of rain was observed in Union City, Tennessee." However, documents merely attached to briefs cannot be considered by this court because they are not properly a part of the certified record. See State v. Matthews, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990).

ineffective assistance of counsel claim is predicated upon trial counsel's failure to present witnesses or introduce evidence, such witnesses' testimony and evidence should be offered at the evidentiary hearing in order for the post-conviction court to determine whether the failure to call a witness or introduce evidence prejudiced the petitioner. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). At the post-conviction hearing, trial counsel admitted that she did not interview Deputy Moore, but she was not asked why she failed to do so. Moreover, Deputy Moore was not called as a witness at the post-conviction hearing. See, e.g., Jerry Burke v. State, No. W2001-01700-CCA-MR3-PC, 2002 WL 31852866, at *4 (Tenn. Crim. App. Dec. 20, 2002) (holding that the petitioner had failed to establish ineffective assistance for failing to call police officers to testify because he did not present the testimony of these witnesses at the hearing). In addition, the Petitioner presented neither the dispatch log nor reliable evidence of the weather conditions on the evening of the traffic stop. We agree with the post-conviction court that the Petitioner has failed show what further investigation into these matters would have revealed. He is not entitled to relief based upon this claim.

## II. Cross-Examination of State's Witnesses

In this regard, the Petitioner argues that trial counsel was ineffective "in failing to cross-examine the State's witnesses about the location and condition of the white bag discovered in the ditch." Specifically, the Petitioner contends that trial counsel "did not cross-examine the arresting officer or the TBI agent about their testing procedures or the test results." The Petitioner also notes that trial counsel did not "cross-examine the arresting officer about why his body cam or dash cam was not working on the night he stopped the Petitioner on the four-wheeler." According to the Petitioner,

> most importantly, [trial] counsel did not cross-examine the methamphetamine expert who testified to finding discarded meth materials "hundreds of times" just like in [the] Petitioner's case. Considering [trial] counsel's own knowledge that the ditch was a common dumping area, it was imperative that counsel use the expert's testimony to show that the white bag could have been tossed into that ditch by a hundred people other than [the] Petitioner.

The State responds that the Petitioner's specific allegations of witnesses' cross-examinations on appeal are waived because they were not properly raised in the post-conviction court. The State further contends that the post-conviction court "properly denied the [P]etitioner's claim that counsel failed to cross-examine the witnesses at trial."

- 13 -

We note that four State's witnesses testified at the Petitioner's trial—Mr. Long, Deputy Moore, Agent Sain, and Officer Simmons.[3]  The Petitioner's issues on appeal focus on trial counsel's cross-examinations of Deputy Moore, Agent Sain, and Officer Simmons.

A. General Allegation.  In his amended petition, the Petitioner alleged that trial counsel "failed to properly cross-examine" the State's "witnesses against the [P]etitioner."  The post-conviction found that "[t]he Petitioner [did] not point to any specific instances for this position" at the post-conviction hearing, but "[h]e simply stated that she could have asked some more questions and object[ed] to certain items."

The precise nature of the issues submitted for determination to the post-conviction court certainly lacked clarity, especially given that no arguments were made by counsel.  Generally, "[i]ssues not addressed in the post-conviction court will . . . not be addressed on appeal."  Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005).  However, an issue may be reviewable on its merits when the petitioner raised the issue at the post-conviction hearing and the State failed to object to the issue as waived because it had not been included in the pro se or amended petition.  See Steven Tyler Nabi v. State, No. M2017-00041-CCA-R3-PC, 2018 WL 1721869, at *2 (Tenn. Crim. App. Apr. 9, 2018).  Moreover, had the State objected to the generalness of the cross-examination issue, the Petitioner could have amended his petition, which the Post-Conviction Procedure Act clearly contemplates and generously allows.  See Tenn. Sup. Ct. R. 28, § 8(D)(5).

Although the post-conviction court only made a finding regarding the Petitioner's general allegation of trial counsel's failure to cross-examine witnesses, we believe that the testimony at the post-conviction hearing arguably raised the specific instances which the Petitioner presents on appeal.  Accordingly, we will address the Petitioner's particular allegations regarding each trial witness, the record's being sufficient for our review.

B. Arresting Officer.  Relative to trial counsel's cross-examination of Deputy Moore, the Petitioner submitted at the hearing that the weather issue "was very critical" because Deputy Moore "had testified that there had been a lot of rain that month" and that the ground was wet on the evening of the traffic stop but the bag was dry, thereby, providing circumstantial evidence of the Petitioner's possession.  Trial counsel testified at the post-conviction hearing that she recalled questioning Deputy Moore about the weather on the evening of the traffic stop, including asking him about his belief that the item belonged to the Petitioner based upon the moisture present.

Trial counsel's assertion in this regard is supported by the trial record.  The following colloquy occurred during Deputy Moore's cross-examination:

---

[3] We take judicial notice of the Petitioner's trial record.

Q. Do you recall—you said it had been raining that night?

A. Yes, ma'am.

Q. Was it still raining at the time of the stop?

A. No, ma'am, it had stopped raining at that time, yes, ma'am.

Q. It had stopped?

A. Yes, ma'am.

Q. And would you say it was cloudy still?

A. I would say probably. I mean, it was pitch dark out there.

Q. You don't recall, though?

A. No, ma'am.

Later in trial counsel's cross-examination of Deputy Moore, she asked,

Q. You testified earlier that the bag was not wet, correct?

A. Yes, ma'am.

Q. But it had been raining that night?

A. Yes, ma'am.

Q. And the bag had been laying there, from your testimony, approximately 10 minutes and the bag did not have any moisture on it whatsoever?

A. Well, it had maybe where it hit the wet grass, but it wasn't just soaking wet like everything else in the area.

Q. Again, though, it's a plastic bag, correct?

A. Yes, ma'am.

As discussed above, the Petitioner failed to provide any reliable information that it had not rained on the evening question. These excerpts from trial counsel's cross-examination of Deputy Moore reflect that trial counsel thoroughly questioned Deputy

- 15 -

Moore about the weather conditions and the condition of the plastic bag on the evening in question, contrary to the allegations of the Petitioner.

In addition, trial counsel testified at the post-conviction hearing that she "was always informed" Deputy Moore's "body cam or car-dash cam from the night" was not operational on the night he stopped the Petitioner. Trial counsel confirmed that she never "investigated a work order" regarding the status of the officer's camera. At the hearing, the Petitioner opined that "the dash and body cam" footage "was very critical because [Deputy Moore] stated that [his equipment] had been broke for a year" and that he had "put a work order in," to no avail.

However, once again, the trial record does not support the Petitioner's assertion. At trial, trial counsel asked Deputy Moore the following questions on cross-examination:

Q. And part of the emergency equipment is there a dash cam or a body cam; is that included as well?

A. No, ma'am, I didn't. My camera—I didn't have the camera at that time.

Q. You did not have a camera at that time?

A. No, ma'am.

There was never any mention during the trial that Deputy Moore had any such camera or that a work order had been placed to fix it. The Petitioner likewise provided no proof of this allegation at the post-conviction hearing, such as providing a work order or calling Deputy Moore to testify. He has failed to establish his factual allegations in this regard by clear and convincing evidence.

Finally, in this regard, the Petitioner contends that trial counsel failed to ask Deputy Moore about his "testing procedures or the test results." Trial counsel testified at the post-conviction hearing that she did not "investigate[] that field test at all." However, the Petitioner did not elaborate at the post-conviction hearing, and does not on appeal, as to how further questioning of Deputy Moore regarding the field test he performed would have been beneficial to the Petitioner's case. Moreover, trial counsel did ask Deputy Moore on cross-examination about the amount of time that had passed between Deputy Moore's discovery of the substance and the subsequent field test he performed at his office. Deputy Moore also admitted at trial that no fingerprint analysis or other testing had been conducted outside of the test performed by the TBI. The Petitioner has failed to establish ineffective assistance with regard to trial counsel's cross-examination of Deputy Moore.

- 16 -

C. Agent Sain.  The Petitioner also avers that trial counsel was ineffective by failing to adequately cross-examine the TBI lab technician, Agent Sain, about his "testing procedures or the test results."  Agent Sain's testimony was presented primarily to establish the nature and amount of the substance found inside the plastic bag.  The trial transcript revealed that trial counsel did in fact cross-examine Agent Sain and asked him the "margin of error on these tests[.]"  Agent Sain also confirmed that no further testing, such as DNA testing, was performed.  No specific questions were posed to trial counsel at the post-conviction hearing about the substance of the TBI Agent's testimony or what more trial counsel could have done by cross-examining this witness.  The Petitioner likewise offered no insight into what further questioning about his testing procedures or results would have revealed.  Accordingly, the Petitioner has failed to prove this factual allegation by clear and convincing evidence.

D. Officer Simmons.  The Petitioner's final specific allegation in this regard relates to Officer Simmons's testimony that "he had seen items like those found in the ditch 'hundreds of times' while investigating labs where methamphetamine [was] made." See McCullough, 2018 WL 2148451, at *2.  The Petitioner asserts that "[c]onsidering [trial] counsel's own knowledge that the ditch was a common dumping area, it was imperative that counsel use the expert's testimony to show that the white bag could have been tossed into that ditch by a hundred people other than [the] Petitioner."  Trial counsel did not cross-examine this witness at trial.

Nonetheless, the Petitioner made no specific argument at the post-conviction hearing with regard to Officer Simmons, stating only, "a lot of the witnesses . . . had testified to their past history with dealing with meth-pertaining cases," which inferentially referred to Officer Simmons.  The Petitioner also testified that he felt like trial counsel "should've questioned them on how they would've dealt with [his] situation" of being released from the traffic stop with only "a verbal warning" and the drugs being found later.  Trial counsel was not asked at the post-conviction hearing about her failure to cross-examine Officer Simmons on this topic, and Officer Simmons was not called to testify.  Again, the Petitioner failed to establish this factual allegation by clear and convincing evidence, offering no insight into what further questioning of Officer Simmons would have revealed or how it would have been beneficial to the Petitioner's case.  Moreover, Officer Simmons's testimony itself provided the inference of which the Petitioner speaks.

We conclude that the Petitioner presented no evidence at the hearing as to how trial counsel's cross-examination of any witness was deficient or as to how his attorney should have cross-examined a witness but failed to do so to his prejudice.  See, e.g., Burke, 2002 WL 31852866, at *4 (rejecting a petitioner's ineffective assistance argument based upon trial counsel's failure to adequately cross-examine the State's witnesses).

- 17 -

III. <u>Sufficiency of Criminal Littering Conviction</u>

Finally, the Petitioner argues on appeal that "[t]rial counsel was ineffective in failing to challenge the sufficiency of the evidence to support Petitioner's conviction for criminal littering" on appeal. According to the Petitioner, "[b]ecause there was no testimony that Petitioner disposed of any object that [met] the statutory weight or size requirements for criminal littering, the evidence [was] legally insufficient to support that conviction." The Petitioner observes that trial counsel did not testify to any strategic reason for waiving this issue on direct appeal. The State responds that the issue should be considered waived by it was not stated in either of the post-conviction petitions and was not addressed by the post-conviction court. The State does not address the substance of the Petitioner's allegation.

At the post-conviction hearing, the Petitioner maintained that he did not "fit the criteria" of the criminal littering statute. His argument was premised upon the fact that the alleged item he littered was 14.62 grams of ephedrine and, therefore, did not establish the weight requirement for criminal littering. The Petitioner complained that this issue was not "raised at trial." When trial counsel was asked if she investigated the criminal littering charge, she replied that she went to the scene to take pictures of the area and that she had reviewed the relevant statute. However, trial counsel could not recall the particular elements of the offense by the time of the post-conviction hearing. Moreover, she could not recall specifically how much the bag weighed but opined that it probably weighed less than five pounds. In addition, we note that trial counsel represented the Petitioner on direct appeal. We apply the <u>Strickland</u> test to claims of ineffective assistance of trial counsel as well as ineffective assistance of appellate counsel. <u>Carpenter v. State</u>, 126 S.W.3d 879, 886 (Tenn. 2004).

The Petitioner acknowledges in his appellate brief that this issue was not specifically stated in the petitions. However, the Petitioner asserts that because he challenged at the post-conviction hearing trial "counsel's 'ineffectiveness in general' due to her lack of experience," and because "the criminal littering conviction was addressed at the post-conviction hearing, the record is sufficient for [this c]ourt to review and decide this issue." Based upon the same rationale outlined above, we agree that this issue was arguably raised at the post-conviction hearing, and we will review it on the merits. See <u>Nabi</u>, 2018 WL 1721869, at *2.

At the outset, the Petitioner's issue concerns the grading of the offense rather than the sufficiency of the evidence itself. The crime of littering is defined as follows: "A person commits littering who . . . [k]nowingly places, drops or throws litter on any public or private property without permission and does not immediately remove it[.]" <u>See</u> Tenn. Code Ann. § 39-14-502(a)(1). Littering is graded as mitigated criminal littering, criminal littering, or aggravated criminal littering based upon the weight of the item(s) littered.

- 18 -

See Tenn. Code Ann. §§ 39-14-503 (proscribing mitigated criminal littering as "littering in an amount less than or equal to five pounds (5 lbs.) in weight or seven and one-half (7.5) cubic feet in volume" and punishable as a Class C misdemeanor); -14-504 (proscribing criminal littering as "littering in an amount more than five pounds (5 lbs.) in weight or seven and one-half (7.5) cubic feet in volume and less than or equal to ten pounds (10 lbs.) in weight or fifteen (15) cubic feet in volume" and punishable as a Class B misdemeanor); -14-505 (proscribing aggravated criminal littering as "littering . . . [i]n an amount exceeding ten pounds (10 lbs.) in weight or fifteen (15) cubic feet in volume" or "[i]n any amount for any commercial purpose and punishable as a Class A misdemeanor).

Here, the jury was charged with the elements pursuant to the statute proscribing the offense, Tennessee Code Annotated section 39-14-502(a)(1). Specifically, the trial court charged as follows:

> For you to find the defendant guilty of this offense, the [S]tate must have proven beyond a reasonable doubt the existence of the following essential elements: (1) that the defendant placed, dropped or threw litter on any public property without permission and did not immediately remove it; and (2) that the defendant acted knowingly.

The Petitioner does not make any challenge to these elements, and the record supports the jury's verdict regarding these elements.

The indictment charged the Petitioner with Class B misdemeanor of criminal littering. However, no discussion was had at trial regarding the grading of the offense, and the jury was not charged with finding any particular weight of the alleged items littered. The only evidence presented at trial regarding the items littered and their weight was that two plastic bags were found inside a "big bag" and that the weight of the substance found inside each plastic bag was 14.62 grams and 15.34 grams,[4] respectively. The grading of the offense was likewise not discussed at the sentencing hearing. Additionally, the Petitioner's judgment form stated that the Petitioner was convicted of "mitigated" criminal littering; however, the Class C misdemeanor classification was marked through and the Class B classification was circled.

While the Petitioner observes that trial counsel did not testify at the post-conviction hearing as to any strategic reason for waiving this issue on direct appeal, we note that trial counsel was not specifically asked about her reasoning in this regard. However, we cannot think of any strategic reason that would support trial counsel's

---

[4] No controlled substances were detected in the substance weighing 15.34 grams.

decision-making process, or lack thereof, on this issue. Certainly, the Petitioner's being convicted of a lesser classification of offense and a corresponding lesser grade of punishment was worth trial counsel's pursuing. "A reasonable probability of being found guilty of a lesser charge, or receiving a shorter sentence, satisfies the second prong of Strickland." See Pylant, 263 S.W.3d at 869 (citing State v. Zimmerman, 823 S.W.2d 220, 224 (Tenn. Crim. App. 1991).

Accordingly, we believe that the Petitioner has proven ineffective assistance of counsel in this regard. Because the State did not present sufficient evidence that the items littered weighed over five pounds, the judgment form classifying the Petitioner's littering conviction as a Class B misdemeanor is vacated. On remand, the post-conviction court should enter an amended judgment reflecting the Petitioner's conviction for mitigated criminal littering, a Class C misdemeanor, and a corresponding thirty-day sentence.[5] See Tenn. Code Ann. § 40-35-111(e)(3); see, e.g., Douglas Martinez v. State, No. W2016-00093-CCA-R3-PC, 2017 WL 2472370 (Tenn. Crim. App. Apr. 11, 2017); Steven Q. Stanford v. State, No. E2015-00630-CCA-R3-PC, 2016 WL 3952103, at *10 (Tenn. Crim. App. June 9, 2016) (both cases employing a similar procedure, albeit for strict clerical errors in the judgments).

## CONCLUSION

In accordance with the foregoing, we conclude that the Petitioner received ineffective assistance with regard to the appropriate classification of his criminal littering conviction. The Petitioner's other instances of ineffective assistance are without merit. Accordingly, the post-conviction court's judgment is reversed, and the case is remanded for correction of the Petitioner's mitigated criminal littering conviction judgment form to reflect the appropriate Class C misdemeanor classification and a corresponding thirty-day sentence.

_____

D. KELLY THOMAS, JR., JUDGE

---

[5] The trial court imposed the maximum sentence for the Petitioner's Class B misdemeanor conviction, so we will likewise do the same for the Class C misdemeanor conviction.

- 20 -